COLE & a. *v.* AMERICAN BAPTIST HOME MISSION SOCIETY & a.

64   445
69   2|4

64   445
70   153

An ante-nuptial contract, which provides that the wife shall " retain and have under her control and management the whole of her property both real and personal during her natural life," and limits a vested remainder in " the same " to the husband in fee, applies to and controls the disposition of her after acquired property.

BILL IN EQUITY. Facts agreed. August 18, 1843, Jesse M. Sargent and Betsey Collins, in contemplation of marriage, made and executed the following deed, which was duly recorded: " This indenture . . . witnesseth: That whereas the parties aforesaid have agreed to enter into the relation of marriage and to become man and wife and the said Betsey Collins agrees to become the wife of the said Jesse M. Sargent upon the conditions following, to wit: that she is to retain and have under her control and management the whole of her property both real and personal during her natural life and at her decease the same to descend to her heirs, meaning her children if she shall have any, otherwise to the said Jesse M. Sargent and his heirs.

" Provided however and it is further agreed by the parties afore-
said, that in case the said Betsey should decease before her par-
ents, then they or either of them being the survivor shall have
the full use and control of said property during their natural lives.

"And the said Jesse M. Sargent hereby covenants and agrees
that he will in no case intermeddle with, claim or demand any
part or parcel of said estate during the lifetime of the said Betsey
or of her father or mother but will permit her the said Betsey to
have, hold, manage and control the same in as full and ample a
manner as if such marriage had not taken place.

" In witness whereof the parties aforesaid have hereunto set
their hands and seals the day and year above written and before
entering into the bonds of matrimony."

Immediately after the execution of the deed the parties inter-
married, and maintained the relation of husband and wife until
July, 1856, when Mr. Sargent died.   In April, 1863, Mrs. Sargent
married Gilman Moore, who survived her a few weeks.   In April,
1883, she died, testate, having borne no children, and having sur-
vived both her parents.   By her will, dated July 22, 1874, which
has been approved and allowed by the probate court, after the
payment of six legacies, amounting to $125.00,—the rest, resi-
due, and remainder of her estate was given, bequeathed, and de-
vised to the American Baptist Home Mission Society of New
York.   At the time of the execution of the deed and of her mar-
riage to Mr. Sargent, she was seized and possessed of certain real
and personal property.   She afterwards purchased other real
and personal property, and died seized and possessed of all the
real estate and of a large amount of the personal property.   The
plaintiffs are the children by a former wife, and the only heirs of
Jesse M. Sargent, and pray that the estate may be decreed to them,
and for such other relief as may be just.

*Burnham & Brown*, for the plaintiffs.   I.   This is the case of a
marriage settlement and not of marriage articles.   The instrument
is as formal, complete, and definite as it could well be made.   Its
terms are noticeable for their certainty.   Everything is definitely
settled,—the amount of the interest, the nature of the property,
the persons who are to take, and the times at which they are to
come into possession.   All the statute requirements for the con-
veyance of real estate are carefully complied with.   The instru-
ment is a deed, an indenture, carefully prepared, signed, sealed,
and acknowledged by both parties, attested by two witnesses,
and recorded.   The words used are sufficient to convey property.
No future act was contemplated.   If there is doubt of this, it is to
be observed that the parties lived under this settlement for thir-
teen years, and until the death of the husband, and attempted to
execute no other instrument in pursuance of it.   They understood
it to be a final and complete settlement, and so interpreted it by

their acts. The court should put the same construction upon it to effectuate the intention of the parties. It is an executed trust, and as such must be " obeyed and fulfilled by those standing in the relation of trustees for the benefit of the *cestuis que trust*, according to the provisions of the settlement." And in this view of the case it would not matter at all were the *cestuis que trust* mere volunteers. There need not be an intervention of any trustees. Equity never wants a trustee. *Neves* v. *Scott*, 9 How. 196—*S. C.*, 13 How. 268; *Eaton* v. *Tillinghast*, 4 R. I. 276; *Gray* v. *Rumph*, 2 Hill Eq 7; *Barnes* v. *Hart*, 1 Yeates 221; *White* v. *Thornborough*, 2 Vern. 702, 705; *Duke of Newcastle* v. *Countess of Lincoln*, 3 Ves., Jr., 387, 397; *Bulmer* v. *Jay*, 3 Myl. & K. 197—*S. C.*, 4 Sim. 48; *Lechmere* v. *Carlisle*, 3 P. Wms. 211; *Jenkins* v. *Keymis*, 1 Lev. 150, 237; *Newstead* v. *Searles*, 1 Atk. 265; *Edwards* v. *Countess of Warwick*, 2 P. Wms. 175; *Jthell* v. *Beane*, 1 Ves. 216; *Goring* v. *Nash*, 3 Atk. 188, *n.;* Ath. Mar. Set. 121–123.

At common law the husband became absolutely entitled to his wife's personal property in possession. Sargent, who was married in 1843, before the modern legislation in favor of married women, took the personal property of his wife, but not absolutely. He took it subject to the trusts created by the deed aforesaid. He held as trustee. Upon Mrs. Sargent's death, she having borne no children, he, or his representatives, held the property freed from the trust. The equitable estate merged in the legal. *Hopkinson* v. *Dumas*, 42 N. H. 306; *Richardson* v. *Stodder*, 100 Mass. 528; Per. Tr., *ss.* 13, 345.

As to the real estate, why may not Mrs. Sargent's deed "be considered as a covenant to stand seized of her real estate for the uses therein specially mentioned"? It is upon the consideration of marriage. It meets all the requirements of such a conveyance, though it does not contain, as it need not, the words "covenant to stand seized." *Barnes* v. *Hart*, 1 Yeates 221; *Rollins* v. *Riley*, 44 N. H. 9; *French* v. *French*, 3 N. H. 261.

II. All the cases hold that even marriage articles will be enforced in favor of "those who claim through one who is within the influence of the marriage consideration." And the husband, as one of the contracting parties, is, by all the cases, within that influence. Now if a deed, as formal, definite, and explicit as the one in this case is, shall be held to be not a settlement, but mere articles, minutes, from which a settlement is to be made under the direction of the court, it is still valid, and should be enforced in favor of the plaintiff. For these plaintiffs claim, not as purchasers, but through Jesse M. Sargent, the husband, and as his heirs. Any limitation of property made, or to be made, in accordance with the terms of the instrument in question, which is the only guide to be followed, must be " to the said Jesse M. Sargent and his heirs." The word "heirs" here, as in other deeds, is a word of limitation and not of purchase. The manifest intention, as gath-

ered from the instrument, was to create in Sargent a remainder in fee, contingent upon the death of his wife without children. This contingency has happened, and if the plaintiffs, as heirs, take nothing under this deed directly, they are, as the representatives and heirs of their deceased father, and as persons claiming through him, at least entitled to a specific performance of the contract to which he was a party. *Batchelder* v. *Lake*, 11 N. H. 359 ; *Neves* v. *Scott*, 9 How. 197—*S. C.*, 13 How. 268 ; *Eaton* v. *Tillinghast*, 4 R. I. 276 ; *De Barante* v. *Gott*, 6 Barb. 496 ; *Tabb* v. *Archer*, 3 Hen. & M. 399—*S. C.*, 3 Am. Dec. 657 ; 2 Kent Com. 172, *n.* 1 ; 2 Story Eq. Jur., *ss.* 986, 987 ; Ath. Mar. Set. 126–128 ; *Osgood* v. *Strode*, 2 P. Wms. 255 ; *Benson* v. *Bellasis*, 1 Eq. Ca. Ab. 17 ; *Vernon* v. *Vernon*, 2 P. Wms. 594 ; *Trevor* v. *Trevor*, 1 P. Wms. 631 ; *Goylmer* v. *Paddiston*, 1 Eq. Ca. Ab. 17 ; *Holford* v. *Holford*, 1 Ch. Cas. 216.

III. The result will be the same if "heirs" is considered to be a word of purchase, in which case there is a limitation in this deed to these plaintiffs.

Marriage is said by *Story*, J., in *Magniac* v. *Thompson*, 7 Pet. 348, to be "a consideration of the highest value," and all agree that a consideration of marriage will support every provision with regard to the husband, the wife, and the issue. The consideration extends to the children of the marriage, because they are the natural objects of the solicitude and care of their parents, and hence one of the great and immediate objects of a marriage agreement. But other relatives, especially, as in this case, the younger children of one of the contracting parties, may well be objects of the affection and care of both, and a limitation of property to them may be one of the great purposes of a marriage agreement, and without which it would not have been made. These relatives then, in such cases, come within the reason of the rule which extends the support of the marriage consideration to the issue of the marriage. The rule should be as extensive as the reason for it. To restrict it to the children of the marriage would be to defeat in very many cases the substantial intention of the parties apparent upon the face of the instrument, the one thing which equity considers in the interpretation of marriage contracts. And the best considered authorities, English and American, especially the latter, hold that an ante-nuptial agreement, though it be mere articles, and hence executory, will be enforced in cases where there is a proper limitation, even in favor of relatives who are mere volunteers. "The result of all the cases," to use the language of *Nelson*, J., in *Neves* v. *Scott*, "I think will show, that if, from the circumstances under which the marriage articles were entered into by the parties, or as collected from the face of the instrument itself, it appears to have been intended that the collateral relatives in a given event should take the estate, and a proper limitation to that effect is continued in them, a court of equity will enforce

the trust for their benefit." Indeed, Lord *Hale* held, in *Jenkins v. Kemishe*, Hardres 395, at a time when such agreements were most common, that " the consideration of marriage and of the marriage portion will run to all the estates raised by the settlement." In this view of the case, also, we think the plaintiffs should prevail. *Neves* v. *Scott*, 9 How. 196—*S. C.*, 13 How. 268 ; *Parsons* v. *Ely*, 45 Ill. 232 ; *Tabb* v. *Archer*, 3 Hen. & M. 398 ; *Michael* v. *Morey*, 26 Md. 239 ; *Jenkins* v. *Kemishe*, *supra ; Edwards* v. *Countess of Warwick*, 2 P. Wms. 175 ; Sch. H. & W., *s.* 349 ; 3 Waite Act. & Def. 669.   The following authorities support the above position, or at least go as far in that direction as was necessary under the circumstances of each particular case.   And the marriage consideration was held sufficient to support provisions in favor of the issue of a second wife, of the children of the wife of a former husband, of the grandchildren of the wife by a former husband, of the brother of the husband, of a nephew, and of a sister of the husband who was the daughter of the settlor.   *Jenkins* v. *Keymis*, 1 Lev. 150—*S. C.*, 237 ; *Gale* v. *Gale*, 6 Ch. Div. 148 ; *Newstead* v. *Searles*, 1 Atk. 265 ; *Vernon* v. *Vernon*, 2 P. Wms. 594 ; *Lechmere* v. *Carlisle*, 3 P. Wms. 211 ; *Chapman* v. *Emery*, Cowp. 278, 280 ; *Goring* v. *Nash*, 3 Atk. 186 ; *LeNeve* v. *LeNeve*, 3 Cruise Dig. 363—*S. C.*, 3 Atk. 646. It is immaterial, in any view of the case, that Mrs. Sargent made a will thirty years after the execution of her deed, as bearing upon the question of intention in the interpretation of the deed.   Intention of the parties is the cardinal rule for the interpretation of marriage articles and settlements.   But it is to be gathered, as in other contracts, from the face of the instrument itself if possible.   Evidence *aliunde* will not be received to explain what is clear.   This deed is plain and unequivocal ; it means what it says.   It does not matter what Mrs. Sargent, in fact, may have thought it to mean.   To give such a circumstance as the subsequent execution of a will any weight in a case like this would open a door to fraud, while to make it conclusive would enable every grantor to defeat his grant.   The will operates only upon that property of which the testatrix has a legal power of disposition.   The probate of the will settles no question as to the power of disposition.   *Hooks* v. *Lee*, 8 Ired. Eq. 157 ; *Gause* v. *Hale*, 2 Ired. Eq. 241 ; *Ardis* v. *Printup*, 39 Ga. 648 ; *Trevor* v. *Trevor*, 1 P. Wms. 631 ; *Blandford* v. *Marlborough*, 2 Atk. 545 ; Sch. H. & W., *s.* 352 ; *Simpson* v. *Currier*, 60 N. H. 19 ; *Fitzgerald* v. *Clark*, 6 Gray 393 ; *Gould* v. *Company*, 9 Cush. 338 ; *Rice* v. *Company*, 2 Cush. 80 ; *Black* v. *Bachelder*, 120 Mass. 171 ; *Winslow* v. *Driskell*, 9 Gray 363 ; *Bank* v. *Stone*, 13 Pick. 424 ; *Parker* v. *Parker*, 11 Cush. 530 ; *Holman* v. *Perry*, 4 Met. 492.

*R. M. Wallace* (and *H. W. Chaplin*, of Massachusetts), for the defendants, furnished no brief.

SMITH, J.  The ante-nuptial contract in this case was a marriage settlement, complete in itself.  It was created by deed duly executed by the parties before marriage.  The trusts manifested by the deed are what in equity are deemed executed trusts  Equity regards a trust as executed, in distinction from executory, when the settlor has given complete directions for settling his estate, with perfect limitations.  In this case there is nothing in the deed indicating any further act to be done by the parties.  The contract was made in consideration of marriage, which, in contemplation of law, is not only a valuable consideration to support a marriage settlement, but one of the highest value.  Such settlements, when reasonable and fairly made, are upheld from motives of the soundest policy.  *Magniac* v. *Thompson*, 7 Pet. 348, 393.  This contract was not an unreasonable one.  The husband released his right, under the law as it then stood, to reduce to possession the wife's personal estate, and his rights as tenant, by the curtesy in her real estate, although he remained liable for her debts and support. The wife, by the agreement, retained the control and use of her estate, real and personal, for life; and the control and use of the same by her parents for life, in case they should survive her, remainder to her children, if any, otherwise to her husband and his heirs.  *Non constat* that Sargent would have married her unless she had executed the contract.  It does not appear that her estate was not enjoyed by her during her married life and afterwards, until her decease, according to the terms of the settlement.

The practical construction put upon the contract by the parties was, that it was a full and complete settlement of the estate of the wife.  All and every portion of her estate were definitely settled by the deed in respect to the amount of the interest, and the particular persons who were to take.  The limitations leave no part undisposed of.  The estates for life and in remainder in the property are limited with the formality required to enable a court of equity to carry the trusts into execution according to the intent of the settlors.  If a third person had been interposed as trustee of the estate with the limitations contained in this deed, the settlement would not have been more final or complete, and the same effect would have been given to it.  No third person having been constituted trustee, each party is regarded as holding his estate as trustee for the uses of the settlement, so far as may be necessary to carry out the intention of the parties.  *Neves* v. *Scott*, 9 How. 196, 212.

We are without any brief or suggestion from the defendants of the grounds upon which they resist the execution of this trust.  If it is contended that the children of Sargent by a former marriage are not within the influence of the consideration for the contract, the answer is,—The parties agreed that the estate of Mrs. Sargent, in the contingency named, should descend to her husband "and his heirs."  His heirs are his children by the previous marriage.

Whether the word "heirs" is construed to be a word of limitation, or of purchase, the result is the same. If it is a word of limitation, Sargent took a remainder in fee contingent upon the death of Mrs. Sargent without children, and he having died before his wife, the plaintiffs, as his heirs and claiming through him, are entitled to the performance of the contract. If it is a word of purchase, they take as the persons denoted by the instrument for that purpose. In *Batchelder* v. *Lake*, 11 N. H. 359, 363, it was held that the persons who are within the influence of marriage articles are " the husband and wife and their issue, and also those who claim through one who is within the influence of the marriage consideration; for all these rest their claims on the ground of a valuable consideration. Atherley Mar. Set. 126."

By a marriage settlement the title to the property is changed, and the property to some extent becomes inalienable for a time. The husband and wife, parties to such a settlement, are deemed purchasers in the highest sense, and the party in whose favor the settlement is, becomes, in a certain sense, the creditor of the other. *Magniac* v. *Thompson*, 7 Pet. 348, 394, 395.

If from the circumstances under which marriage articles are entered into, or if, from the face of the instrument itself, it appears to have been intended that collateral relatives in a given event should take the estate, and a proper limitation to that effect is contained in them, equity will enforce the trust for their benefit. *Neves* v *Scott*, 9 How. 196, 210. The plaintiffs being children of Mr. Sargent by a previous marriage, Mrs. Sargent may be presumed to have become interested in their welfare. We think she had them in mind in the use of the word "heirs." They are not, therefore, volunteers, but come within the influence of the consideration of marriage upon which the deed was founded. It has been held that the consideration of marriage, in a marriage settlement, extends to step-children by a former marriage. *Jenkins* v. *Keymis*, 1 Ch. Cas. 103—*S. C.*, 1 Lev. 152; Sch. H. & W., s. 349. *Neves* v. *Scott*, 9 How. 196—*S. C.*, 13 How. 268—is a case much in point;—see, also, 2 Story Eq. Jur., ss. 983, 1380; 2 Kent Com. 162, 163; *Bradish* v. *Gibbs*, 3 Johns. Ch. 523, 540; 1 Perry Trusts, s. 359; Sch. H. & W., ss. 348-369; *Jervoise* v. *The Duke of Northumberland*, 1 Jac. & W. 559; *Magniac* v. *Thompson*, 7 Pet. 348.

The plaintiffs, being the beneficial owners and vested with the equitable title, are entitled to a decree against any one standing in the relation of trustee to the estate, to vest the legal title in them; or if the estate has been converted into money, that the proceeds be paid to them. The executor of Mrs. Sargent's will should be made a party to the bill. Application for that purpose can be made at the trial term.

*Case discharged.*

BINGHAM, J., did not sit: the others concurred.

The foregoing opinion was delivered at the December term, 1885. The defendants moved for a rehearing, and the case was amended so as to show that Mrs. Sargent, after the execution of the marriage settlement, acquired property, both real and personal, in addition to what she had at the date of the instrument. A portion of the property thus acquired was derived from the income of the real estate referred to in the instrument.

*R. M. Wallace*, for the defendants. In the construction of written instruments, the real intention of the parties is to be ascertained. That intent is ascertained not only from the language of the particular part of the instrument under consideration, but from the whole instrument, the relations of the parties, and all the surrounding circumstances. The arbitrary rule of giving to certain words and phrases a technical and fixed meaning is now done away with. The rule which makes the ascertainment of the parties' intention "the paramount test of accuracy in interpretation is now more generally applied." *Kennard* v. *Kennard*, 63 N. H. 310; *Rice* v. *Society*, 56 N. H. 191; *Brown* v. *Bartlett*, 58 N. H. 511; *Wilkins* v. *Ordway*, 59 N. H. 378.

The true intention of the parties is the primary rule in the construction of a marriage settlement. *Mintier* v. *Mintier*, 28 Ohio St. 307. In regard to this ante-nuptial agreement, what was the actual intent of the parties? It was that Betsey Collins, who had some property, and was about to be married to Jesse M. Sargent, should retain and have under her control and management all her property during her natural life free from the interference and control of her husband; and if her parents or either of them survived her, to give to them or either of them a life interest in said property, and then to have it go in fee to her children if she had any, and if not, to her husband in fee if he survived her.

Is there anything in the way the parties themselves treated this matter which shows how they understood it? This is of the utmost importance in showing what the real intent of the parties was. In *Brown* v. *Bartlett*, 58 N. H. 511, *Doe*, C. J., said,—"The question of intention is ordinarily determined as a question of fact by the natural weight of competent evidence, and not by artificial rules of interpretation." The same rule would apply to this ante-nuptial agreement. We find Mrs. Sargent, one of the parties to this agreement, long after the death of her husband, making a will giving this property entirely away from the children and heirs of Jesse M. Sargent by his first wife, to a Christian institution. This shows that she understood this ante-nuptial agreement not to extend to the children and heirs of Jesse M. Sargent, and to have no effect after his death. It shows what her intention was when she made this agreement. There is nothing on the part of Jesse M. Sargent that proves that he entertained any different idea in regard to this matter, so that her declaration in that most solemn

of all instruments which a person can make,—a last will and testament,—indicates what her intention was in making this antenuptial agreement, and it is uncontradicted by any act or word of hers or of her husband.

Let us look a moment at the probabilities of this matter. Is there any reason why Betsey Collins, when she made this agreement at the time of her marriage, looking ahead to the possibilities, should want her property after her death, without children, and after her father's and mother's death and her husband's death, to descend to her husband's heirs rather than her own? Isn't it natural that under those circumstances she would want the property to descend to her side of the house, or as she might will it, rather than upon the husband's side? Would not every consideration of reason and justice impel both parties to purpose to have it go to the wife and her heirs rather than to the husband and his heirs? It may be said if this is so they would have so provided in this agreement; but as the title to the property was all in her, and would still remain in her when all the provisions she was making in the ante-nuptial agreement failed, it was entirely unnecessary to make any provision to that effect.

It is claimed that she had in mind the children of Jesse M. Sargent by his first wife, when she used the words "Jesse M. Sargent and his heirs." This is not so, because when she referred to her own children in the previous line of the agreement she used the words "her heirs, meaning her children;" and if by the words "his heirs" she had intended Jesse M. Sargent's children, she would have added the words "meaning his children." She simply intended by the words "his heirs," after Jesse M. Sargent's name, that if he ever took any property under this agreement, he should take it in fee. The words "his heirs" defined the quality of estate he was to take, if he ever took anything.

The case of *Moorhouse* v. *Wainhouse*, 1 Wm. Bl. 638, sustains this view of the case. That case seems to be almost a complete parallel of the present one. On that account I venture to give it in full:

"The case, upon all the pleadings, appeared to be this: John Appleyard and Martha, his wife, 1st December, 1725, by a deed to lead the uses of a fine,—Hil. 12 Geo. 1,—settled the premises (being the wife's inheritance) to the use of said Martha for life; remainder to John Appleyard for life, if he and the said Martha should have any issue that should so long live; remainder to all such children in fee as tenants in common. If Martha should die without such issue, or all such issue should die before twenty-one; then as to one moiety, to John Appleyard in fee, and as to the other moiety, to Susanna Mitchell, mother of said Martha, for life, and to the appointees of said Susanna and her second husband, and, in default of appointment, to said Susanna in fee. Proviso, that John Appleyard and Susanna Mitchell should pay 2£ 2s. to

one John Rishworth; and, in default, the trustees to enter and raise the same out of the rents and profits. 10th August, 1741, John Appleyard died. Martha intermarried with Richard Shackleton, who also died; and by lease and release, 26th and 27th October, 1764, Martha Shackleton makes a tenant to the praecipe for a recovery, which was had the same term, and the uses declared to Martha Shackleton in fee. 21st December, 1764, Martha Shackleton devises the premises to the plaintiffs, who bring this action against the defendant, who claims under Samuel, the brother and heir of John Appleyard.

"This case was argued in Easter term by *Wallace* for the defendants, and *Walker* for the plaintiffs; and in this term by *Coxe* for the defendants; but *Blackstone*, for the plaintiffs, was prevented from going on by the court, who were clearly of opinion, upon all the circumstances of the case, that the contingency on which it was intended that the estate of John Appleyard should arise, was that of his surviving his wife; and that, as she died first, the contingency never arose. The other points made by the counsel, whether this was an estate for life, or in fee tail by implication in Martha; and whether, as the estate was contingent, and never vested in the husband, it can now vest in his heirs, were not resolved by the court; who, upon the first point only, gave judgment for the plaintiff."

Mr. Fearne, in his work on "Remainders," cites and approves of the case *Moorhouse* v. *Wainhouse*. He states it as a general rule, that a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chance to die before the contingency happens. But he brings the case of *Moorhouse* v. *Wainhouse* within an exception to this general rule, which he states as follows:

"But some cases may arise where the existence of the devisee, etc., of the contingent interest at some particular time, may by implication enter and make part of the contingency itself, upon which such interest is intended to take effect. As in a modern case of a settlement of the wife's lands to herself for life, remainder to her husband for life, if any issue of the marriage should so long live, remainder to all the children in fee; and if she died without issue, or such issue died under twenty-one, then as to one moiety to the husband in fee. The court of king's bench held that upon all the circumstances of the case the contingency upon which the husband's estate in fee was to arise was that of his surviving (viz., living at the death of) his wife, and that, as he died first, the contingency never arose." Reference is made in the marginal notes, to the case of *Moorhouse* v. *Wainhouse*. Fearne Rem. 364.

I do not understand that the general rule given by Fearne, that contingent remainders are inheritable before the vesting of the estate, is the law of New Hampshire, and I shall speak of that further on; but if it is the law of New Hampshire, I claim that this

case clearly comes within the exception to the general rule, and that the existence of the husband at the time of the death of the wife, when the estate was to vest by implication, entered into and formed a part of the contingency upon which the estate was to vest. It seems certain that this was so in this case, because it could never be ascertained, until after her death, that the wife would have no children, and this estate to her husband, upon the contingency of her dying without children, could never vest until after her death.

The plaintiff's counsel, in their brief, suggest that this agreement may be considered as a covenant to stand seized. If so, it would be a covenant on the part of Betsey Collins to stand seized of her property to her own use for life, remainder, upon her death, for life to her parents, or either of them, contingent remainder in fee to her children, if any ; if none, contingent remainder in fee to her husband. It is clear that this would be a contingent and not a vested remainder. 2 Washb. R. P., ss. 23, 24. The recent cases of *Wiggins* v. *Perkins*, 64 N. H. 36, *Crosby* v. *Crosby*, 64 N. H. 78, *Kennard* v. *Kennard*, 63 N. H. 303, *Hill* v. *Rockingham Bank*, 45 N. H. 270, go upon the assumption that one distinction between a vested and a contingent remainder is, that in a vested remainder, if the person who is to take dies before the contingency happens, yet his heirs will take the contingent estate, while in the case of a contingent remainder they will not inherit it. And the cases of *Robertson* v. *Wilson*, 38 N. H. 48, *Hall* v. *Nute*, 38 N. H. 422, *Hayes* v. *Tabor*, 41 N. H. 521, decide that in the case of a contingent remainder, the person who is entitled to the remainder before the contingency happens has no interest in the contingent estate, and can make no conveyance of it. Now if that is the law in New Hampshire as those cases seem to indicate, then even if the plaintiff's counsel are right in regard to this being a covenant to stand seized, yet the heirs of Sargent can take nothing, he having died before the contingency happened when the estate would vest. And all the different estates carved out by this agreement having failed, the instrument has spent itself, and her property reverts to the grantor.

As to the after acquired property, I understand the rule to be that ante-nuptial agreements do not convey after acquired property, unless the agreement contains express words, bringing subsequently acquired property within its operations. A recent and important case in Pennsylvania has expressly decided this question in the manner above stated ; and the court, in deciding that the ante-nuptial agreement did not affect after acquired property, say,— "The agreement is devoid of any express words bringing subsequently acquired property of either within its operation." *Rahe* v. *Bank*, 96 Penn. St. 128.

When, by an ante-nuptial agreement, the use of certain property is secured to the wife free from the interference or control of the

husband, the profits or income of the property belong exclusively to the wife, and do not become a part of the fund in which a remainder is created, unless some provision is made therefor. *Artope* v. *Goodall*, 53 Ga. 318. In this ante-nuptial agreement there is not the slightest expression which in any way refers to subsequently acquired property. So whatever property this woman subsequently acquired would not under any circumstances go under this ante-nuptial agreement. The cases which the plaintiffs' counsel cites in his second brief, which I have been able to examine, recognize the same rule.

*Burnham & Brown*, for the plaintiffs. The validity of the marriage settlement in this case, so far as relates to property owned by Betsey Collins at the time of the execution of the instrument, has been maintained by us in a former brief. In support of the position that under the settlement the after acquired property of the settlor passes to the plaintiffs, we submit the following propositions and authorities. The intention of the contracting parties furnishes the cardinal rule for the interpretation of marriage articles and settlements. *Walker* v. *Beal*, 3 Cliff. 165; *Mintier* v. *Mintier*, 28 Ohio St. 307; Pea. M. S. 457, 523, 532. A marriage settlement does not, at law, convey after acquired property. But if it was the intention of the parties that such property should pass, equity will construe the instrument as a contract to convey and enforce its performance. *Ramsden* v. *Smith*, 2 Drew. 302; *Withers* v. *Weaver*, 10 Penn. St. 391; *Smith* v. *Osborne*, 6 H. L. 394; *Tawney* v. *Ward*, 1 Beav. 563; *Milford* v. *Peile*, 17 Beav. 602; *Young* v. *Smith*, L. R. 1 Eq. 180; *Agar* v. *George*, 2 Ch. Div. 706; *In re Jones' Will*, L. R. 2 Ch. Div. 362; *Vason* v. *Bell*, 53 Ga. 416.

In this case the intention is apparent. What property was Betsey Collins " to retain and have under her control and management "? The deed of 1843 says " the whole of her property, both real and personal, during her natural life." These terms are broad enough to include, and unless restrained do include, the whole after acquired as well as previously acquired property; and they are not restrained by any words in the deed, nor by any circumstances outside of it. The property acquired by her after her marriage would have been subject to precisely the same marital rights of her husband as her property previously acquired. And the considerations that influenced her to place the one class of property beyond his control bore with equal force upon the other class. It is not likely that she retained for herself, her parents, and her children, if any, the rights of a *feme sole* over her property in possession, and still allowed its accumulated income, together with all other post-nuptial accumulations of personalty, to fall under the control, and at his pleasure become the absolute property, of her husband. No more would she, having made such careful

provisions respecting her property in her solicitude for herself, her parents, and her children, permit her real estate to become encumbered, simply because it might come to her ownership after marriage.

Nor can it be supposed that the covenant of Jesse M. Sargent to "in no case intermeddle with, claim, or demand any part or parcel of said estate during the lifetime of said Betsey, or her father or mother," applies, or was intended to apply, to the little property alone which she possessed upon the day of the date of the settlement. Such a construction would so restrict the operation of the deed as to render its provisions of little value to those in whose favor it was drawn. It is further to be noticed that the conduct of the contracting parties during the whole of their lives puts an interpretation upon the contract that is conclusive. The wife asserted her right to her acquisitions. She retained and invested her accumulations. She purchased real estate and in the lifetime of her husband, as we desire to show by amendment, if deemed material, and he assented, or at least made no effective assertion of his rights under the common law, which law prevailed during the whole period of his life.

The intent of the parties as shown by the deed, and indicated by the circumstances under which it was made, will be effectuated by a decree for the plaintiffs, embracing the after acquired property. "A court of equity will carry the intention of these settlements into effect, and not permit the intention to be defeated." 2 Kent Com. 165.

SMITH, J. The defendants contend that the parties to the marriage settlement did not intend Sargent should take under it unless he survived his wife; and *Moorhouse* v. *Wainhouse*, 1 W. Bl. 637 is cited in support of this position. That case is stated as it appeared from the pleadings, the language of the deed in question not being given. It is difficult, from the meagre report of the case, to see upon what evidence the decision was made. In this case there is nothing in the language of the marriage settlement to indicate that the contingency upon which the estate in remainder was to vest in Sargent depended upon his surviving his wife. If the parties intended that he should take nothing except in that event, we should expect to find their intention so expressed in apt words in the written instrument, and not left to be inferred. The failure or omission to insert such language is evidence from which the contrary intent may be inferred. We fail to see any evidence in the written agreement, or in the circumstances of the parties, that their intention was what the defendants claim it to have been.

It is also contended that the remainder settled upon the husband was contingent and not vested. It is the present right of future enjoyment whenever the possession becomes vacant, and

not the certainty that the possession will become vacant before the estate limited in remainder determines, which distinguishes a vested from a contingent remainder. *Kennard* v. *Kennard*, 63 N. H. 303; *Vandewalker* v. *Rollins*, 63 N. H. 460; *Wiggin* v. *Perkins*, 64 N. H. 36; *Crosby* v. *Crosby*, 64 N. H. 77. Tested by this rule, the remainder settled upon Sargent was a vested remainder. It vested in him immediately on the execution of the settlement and marriage, subject to be devested by the birth of a child to Mrs. Sargent. The terms of the settlement and the circumstances of the parties show that Mrs. Sargent intended to dispose of her whole estate by the settlement, and there is nothing to indicate that she contemplated leaving a part of her estate to descend to her heirs by reason of a doubtful contingency.

The case has been amended so as to show that Mrs. Sargent acquired property after the ante-nuptial agreement was entered into, a portion of the property so acquired being derived from the income of the real estate of which she was seized at the time of her marriage. A question is thus presented, whether the after acquired property is covered by the agreement. The marriage settlement was made, and the marriage took place, before the statutes of 1846 and 1860 in relation to the rights and property of married women were enacted. See Laws of 1846, *c.* 327, and 1860, *c.* 2,342. Sargent by the marriage settlement agreed that he would not intermeddle with, claim, or demand any part of his wife's estate during her life, or the lifetime of her parents, but would permit her to hold, manage, and control the same as if the marriage had not taken place. He thereby released his right·to reduce to possession her personal estate and his rights as tenant by the curtesy in her real estate. Suppose after the marriage Mrs. Sargent had received a legacy or gift : can there be any doubt that under this ante-nuptial contract she would have been entitled to the possession, control, and benefit of it during her natural life? And suppose her husband under his right at common law had undertaken to reduce it to possession : can there be any doubt it would have been held that he could not interfere with her possession and control of it, upon the ground that the contract gave her the right to it during her life ? Or, suppose Mrs. Sargent had at her marriage a promissory note, or a farm : would not the contract cover the interest upon the note, or the income of the farm, as incident to the principal and to the farm? These examples make it clearly to appear, we think, that the after acquired property is included in the marriage settlement. By it she retained the control and management of " the whole of her property, both real and personal, during her natural life." The language is broad enough to include the after acquired property. No reason appears why she should desire to retain the possession and benefit to herself, parents, and children, of the property she possessed at the time of her marriage,· and should leave her after acquired per-

sonalty to fall into the possession of her husband to become his absolute property, and her after acquired realty to become encumbered by his estate by the curtesy.

The decree to which the plaintiffs are entitled should include the after acquired property, as well as that belonging to Mrs. Sargent at the time of her marriage.

*Case discharged.*

All concurred.