## Hoitt *v*. Webb and Wife.

An administrator, who, under a license from the court of probate, advertises the real estate of his intestate for sale at public auction, cannot himself legally purchase the property at such sale, or procure any one to purchase it for him. And any person interested in the estate may avoid the sale.

For all the purposes of security to an assignee, and to enable him to obtain any just remedy under a mortgage, the assignment of the debt and mortgage passes the legal estate, and the rights of a second or third assignee are co-extensive with those of the first.

The act of 1851, exempting the homestead of families from attachment and levy, or sale on execution, extends to such real estate only as is occupied as a homestead. It does not extend to premises that are let to tenants.

The provision in the act that "such homestead shall not exceed in value $500," does not affect the construction in this respect. If a party occupies a homestead of a less value than $500, while he has other real estate that is rented to tenants, it is only that which is occupied as a homestead that is exempt.

WRIT OF ENTRY, brought to recover a lot of land in Exeter, bounded south on Front street, 2 rods 5 feet; westerly on land of J. Batchelder, 6¼ rods; northerly by land set off to said Rachel, (the tenant) as her dower in her late husband's estate, 2 rods 2 feet; easterly by land of William Collins.

Upon the general issue, the parties elected a trial by the court.

The premises in question were part of the estate of Robert Sharkey, deceased. In the annexed plan, the real estate of Sharkey is designated by the letters A and B:

SOUTH.

Hoitt *v.* Webb and Wife.

From the time of his marriage, October 3, 1850, to his death, Sharkey occupied the house on Lot B, as his dwelling-house, in connection with the residue of that lot. Lot A, with the house upon it, was leased by him to tenants. The house on Lot B had been a shop, and had no cellar, and it seemed that Sharkey had at times reserved a privilege, when he let the house on Lot A, to keep some articles in the cellar.

The tenant, Rachel Webb, was the widow of Sharkey, and the Lot B, with the house upon it, was set off to her as her dower in his estate. They were worth less than $500.

The demandant claims title to the premises marked A, under Sharkey.

1st, under a mortgage of Sharkey to G. Gardner, dated July 30, 1852, conditioned to pay a note of $42.35, dated March 10, 1851, on demand, with interest; assigned by Gardner to G. P. Kelly, August 17, 1855, and by Kelly to the demandant, August 25, 1855. The right of dower was relinquished in this mortgage.

2d, under a mortgage from Sharkey to G. Smith, dated May 13, 1852, conditioned to pay a note for $92, payable in one year, with interest annually, assigned by Smith to G. P. Kelly, May 26, 1855, and by Kelly to the demandant, August 25, 1855.

3d, under a sale of the equity of redemption by the administrator of Sharkey's estate. It was shown that on the 15th of June, 1853, Hoitt (the demandant) was duly appointed administrator of Sharkey's estate. The estate was represented insolvent, and the commissioner made his report of claims, November 10, 1854, amounting to $252.58, which was accepted April 11, 1855.

February 13, 1855, the administrator presented to the court of probate a petition for license to sell real estate of the deceased, in which he set forth, that the personal estate of the deceased was not sufficient to pay the just demands against his estate; that said deceased at the time of his death was seized of the right in equity to redeem the following real estate, situate in Exeter, (describing the tracts A and B; also, describing tract B,) as being

that part of said real estate set off to the widow of said deceased, as and for her dower in the estate of said deceased, and the whole of said real estate being subject to all the rights and interests of the widow and minor children of said deceased, by virtue of the homestead exemption act, &c. Wherefore he prayed license to sell at public auction said equity of redemption, together with all the right, title and interest of said deceased in the whole of said real estate, subject to the widow's dower, and the rights of said widow and minor children, under said homestead exemption act, for the payment of said demands.

After due notice, license was granted, April 11, 1855, reciting the insufficiency of the personal estate, to sell at public auction the real estate of said deceased, to pay the just demands, &c., to wit: the right in equity to redeem the lot A, describing it. Also one other piece of real estate, describing lot B, and adding, being that part of said real estate set off to the widow of said deceased, as and for her dower in the estate of said deceased, and the whole of said real estate being subject to all the rights and interests of said widow and minor children, by virtue of the homestead exemption act, and then adding, Therefore license is hereby granted said administrator to sell the right in equity to redeem the first described premises, subject to any rights which the widow or minors of said deceased may have to said premises by virtue of said homestead exemption act, &c.

It was shown that the administrator took the oath required by the statute, April 23, 1855. A printed advertisement of a sale of the demanded premises, to be held May 26, 1855, at 10 A. M., on the premises, bearing date May 24, 1855, was produced, but no other evidence of any notice of sale, except a personal notice to G. Smith, one of the mortgagees, and to Mr. Lovering, a creditor.

A deed of I. B. Hoitt, the administrator, to George P. Kelly, dated May 26, 1855, conveying to him the demanded premises, subject to the rights of the widow and children, and reciting the license, was offered.

The conditions of sale were produced, which described the es-

tate as subject to the mortgages to Gardner and Smith, the latter being made and executed after the homestead exemption act took effect; the other before that date. Other debts contracted before January 1, 1852, amounting to $117, after that date $35. The property to be sold, subject to any rights of the widow and children under the homestead act. The right of redemption was sold to G. P. Kelly for $25, and he signed a contract to take a deed and pay for it at that price.

The demandant produced a quitclaim deed from George P. Kelly to him, dated August 25, 1855, conveying to him the same premises.

G. Smith, the mortgagee, attended the sale; saw no notice, but was personally notified; did not bid, as he did not want the property; agreed before the sale to sell his mortgage to Kelly for $85, and received his note, with Hoitt as surety, in payment, after the sale.

The appraised value of the demanded premises was $415, and of the lot set off as dower, $310. These lots were purchased by Sharkey at different times, and were not separated by a fence.

On the part of the tenant, a witness testified that she heard Mr. Hoitt talk of the sale of the equity, before the sale. He said he should set it up at auction, and intended to have it bid off for himself. He said he intended to get Plumer Kelly to bid it off for him. On the same day it was sold, after the sale, Hoitt said he got Plumer Kelly to bid it off. He got it for himself. She asked him if the house was bid off for him, and he said it was.

Evidence was introduced tending to show that a person who was present at these conversations did not hear Mr. Hoitt make any such statement.

G. P. Kelly testified that he was not employed by Hoitt to bid for him; but his testimony was effectually impeached and discredited.

Thereupon the court found that the demandant had no title to the demanded premises under the sale of said real estate, by license from the probate court:

Hoitt *v.* Webb and Wife.

That he was entitled to recover the demanded premises as assignee of the two mortgages before described, and therefore found that the said William H. Webb and Rachel Webb did disseize the plaintiff in manner and form as the said Hoitt had alleged.

The questions of law arising on the case were reserved for the decision of this court.

*Wood,* for the defendants.

The plaintiff cannot maintain this action upon his own seizin. If he can maintain a writ of entry upon the mortgage, it must be as administrator, and not in his own right.

The widow may claim dower in the mortgaged property. *Bullard* v. *Burrows,* 10 N. H. 500.

He is a trustee for the estate, and cannot be a purchaser. *Byington* v. *Muel,* 10 Vt. 116 ; *Perkins* v. *Thompson,* 3 N. H. 144 ; *Currier* v. *Green,* 2 N. H. 225.

The premises claimed are a homestead.

*Stickney,* for the plaintiff.

The plaintiff claims the right to recover upon the mortgages which had been assigned to him. The purchase violated no duty as administrator, and did not bring his private interests in conflict with the interests of the estate. No exception is taken to the validity of the mortgages or to the justice of the debts. The commissioner's report was accepted April 11, 1855. The assignment was made August 25, 1855.

The purchase does not discharge the mortgages; those remain in force. The plaintiff is entitled to the possession of the land under them.

The court have held that an administrator cannot purchase property sold by him. *Remick* v. *Butterfield,* 7 Foster (27 N. H.) 70. But they have not held that an administrator cannot purchase a mortgage or debt against the estate ; the reason does not apply to such a case.

The dower of the widow has been assigned in all the real

estate of the deceased, and she has no right of dower in the land demanded; if she had, she is entitled to no part of it until it is assigned.

The defendants have no rights under the homestead exemption act. It was not his homestead. If they had any such rights, they have not been assigned.

EASTMAN, J.    On the trial of this cause, the court found that the demandant had no title to the premises by virtue of the sale under the license from the probate court. This result, we take it, was arrived at by finding that the sale was made for the benefit of the demandant, by an arrangement between him and Kelly, the purchaser; as a sale thus made would be illegal. An administrator, who, under a license from the court of probate, advertises the real estate of his intestate for sale at public auction, and at the sale becomes himself the highest bidder, cannot make a valid sale and conveyance of the property to a third person; and any one whose interest is affected by such sale may avoid it. *Remick* v. *Butterfield*, 7 Foster 70. And it makes no difference that the property is bid off by a third person for him, at his request. A party cannot legally purchase on his own account, either by himself or by the aid of a friend, that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells as his own. He cannot unite the opposite characters of buyer and seller. *Currier* v. *Green*, 2 N. H. 225; *Brackett* v. *Tillotson*, 4 N. H. 208; *Perkins* v. *Thompson*, 3 N. H. 144; *Litchfield* v. *Cudworth*, 15 Pick. 23; *Church* v. *Marine Ins. Co.*, 1 Mason 341; 2 Mason 369; 10 Vesey, Jr., 381. See, also, *Towle* v. *Leavitt*, 3 Foster (23 N. H.) 360.

The finding, therefore, upon this point of the case was correct.

The court also found that the plaintiff was entitled to recover the demanded premises, as assignee of the two mortgages. These mortgages were made for the security of debts due from the deceased, and there is no suggestion that the demands were not for good consideration. They were allowed by the commissioner,

whose report was accepted by the probate court without appeal, and in the hands of the mortgagees they were valid claims upon the land and against the estate. Being the property of the mortgagees, they had the right to sell and assign them to whomsoever they chose, and a *bonâ fide* purchaser and assignee would succeed to all the rights of the original mortgagees. For all the purposes of security to an assignee, and to enable him to obtain any just remedy under a mortgage, the assignment of the debt and mortgage passes the legal estate. *Deming* v. *Comings*, 11 N. H. 474, 481; *Hills* v. *Elliott*, 12 Mass. 26; *Howard* v. *Handy & al.*, 35 N. H. 315.

And the rights of a second or third assignee are coëxtensive with those of the first.

The demandant, then, if there was no objection to his becoming the purchaser of the mortgages, upon the ground of being administrator on the estate of the mortgagor, would stand in the position of the mortgagees, and possess their rights, and the case would be decided as though the action was brought by the original mortgagees.

The purchase of mortgages against an intestate, by an administrator on his estate, with his own means and for his own personal advantage, is not to be commended, but on the contrary is to be regarded with distrust and suspicion; and although we are not prepared to hold such a purchase illegal — the debts secured by the mortgages being valid against the deceased — yet were there any evidence tending to show fraud upon the estate, the transfer would be treated as having been made in bad faith, and as invalid. In the purchase of these mortgages no fraud was found by the court that tried the cause, and we are not to presume that any existed. The demandant, therefore, stands in the position of the mortgagees, and the case is to be determined as upon their rights. If the action could be maintained by them, it can be by him.

These mortgages were both executed after the homestead exemption act of July 4, 1851, took effect, although one of them was made to secure a note of a date anterior to the passage of

the act. That note, by the provisions of the fifth section of the act, was not affected by its passage, and was good against any property left by the mortgagor at his decease. The homestead also was not exempt from any attachment that might have been made in a suit upon that note. Whether, however, a mortgage to secure such a debt, but executed, as this was, after the act took effect, would be subject to the provisions of the act, or would take precedence of it, might be a question of some doubt, were it necessary to be determined, but it is not in the present case.

The case finds that from the time of the marriage of the mortgagor with the defendant, Rachel Webb, the demanded premises were leased by him to tenants, and the mortgagor and his wife occupied another house and lot as their homestead. All the rights which the defendants assume to have in the premises are founded upon the marriage of Rachel Webb with Sharkey, the mortgagor; and if she has none, either of dower or by virtue of the homestead exemption act, the defence must fail.

It would seem clear that there is no right of dower that can interfere with the demandant's claim, for dower has been set off and assigned, and does not embrace any part of the demanded premises. The first mortgage also was signed by Rachel Webb, when she was the wife of Sharkey, and her dower in the premises relinquished, so that, to the extent of that mortgage, dower was barred.

Can the tenants hold a homestead in these premises? We think not; and upon the ground that they were never occupied by the mortgagor or his widow as a homestead. The title of the act of July 4, 1851, to which we have referred, is " an act to exempt the homestead of families from attachment and levy or sale on execution." And the first section provides that from and after the first day of January, 1852, the " family homestead " of the head of each family shall be exempt, &c. It is the " homestead," the " *family* homestead," that is exempt, and not other real estate which the debtor may own. Throughout the several sections of the act, the exemption is spoken of as

applying to the "homestead," and no reference is made to any other estate as protected by the act. What, then, is the homestead? "Stethe, or sted," says Lord *Coke*, "betokeneth properly a bank of a river, and many times a place." Co. Litt. 4, 6. The homestead, according to that definition, means the home place; the place where the house is; and such is its legal acceptation at the present day. It is the home, the house, and the adjoining land, where the head of the family dwells; the home farm. It does not extend to other tenements, lots and farms, that are not occupied personally by the owner and his family; houses in which they do not dwell, and farms on which they do not live.

And the term does not necessarily imply all those parcels of land which may adjoin and be occupied together, for the homestead is the place of the house. *Richardson*, C. J., in *Woodman* v. *Lane*, 7 N. H. 245. Much less, then, can it apply to leased property occupied by tenants, where the owner does not dwell.

The demanded premises having never been occupied by the defendants, or by the mortgagor, as a homestead, but, on the contrary, having been leased property, occupied by tenants, and the mortgagor and Rachel Webb having dwelt and had their home in another house, upon another lot, do not, we think, fall within the spirit or intention of the act exempting the homestead, and consequently the defendants have no right in the premises.

The fact that the house and lot occupied by the mortgagor and his wife was not of the value of $500 does not change the aspect of the question. The act provides that "such homestead shall not exceed in value $500." This fixes the limit beyond which the amount exempted shall not extend, but it does not require that the property exempted shall reach that sum, nor that other property, not occupied as a homestead, shall be taken to make it up. We are not inclined to limit or restrict the operation of the act, but to give it as liberal a construction as the legislature intended. To say, however, that the exemption shall extend to property not falling within the proper and legal signification of .

the term homestead, and which has never been occupied as such, appears to us would be carrying the construction beyond what was ever designed. If a person chooses to occupy a homestead of a less value than $500, and rent his other real estate, he has a perfect right so to do, but the other property cannot be exempted; the statute does not confer upon him, in this respect, greater privileges than those which he has conferred upon himself, and the law will not declare that a homestead which he by his acts has shown not to be.

The property, then, which by the act of July 4, 1851, is exempted from attachment and levy, and which is not lost except by deed, duly executed by the grantor and his wife, is the house and land where the owners dwell and have their home, whatever may be its value, provided that it cannot exceed $500; and other estate not so occupied is not exempt.

The decision of the court upon the trial was, therefore, correct, and there must, accordingly, be judgment for the demandant upon the two mortgages.