ROBERT W. UPTON, *Trustee v.* D. WALDO WHITE & *a.*

*Laurence I. Duncan* (by brief and orally), for Robert W. Upton as *amicus curiae.*

*Peter J. King,* for certain defendants, and D. Waldo White, *pro se,* filed no briefs.

ALLEN, C. J.   I.   The will is construed to provide for the conversion of the trust property into cash upon the life beneficiary's death.   The requirement for the trustee to "pay over any property" then held in the trust imports such conversion of the property by him before its distribution.   This construction is strengthened by the unitary character of the property the testator left, preventing its economic division in proportionate parts among the remaindermen.   To give "equal portions" of the property at the son's death among four persons with the unitary character of the property unchanged, contemplates conversion, and a tenancy in common among them is not, within the contemplation of the will, a distribution in the form of payment.

The power of the named trustee to sell without judicial license extends to the successor trustee, although not expressed in terms to such effect.   The power is not of a character leading to a conclusion of personal confidence reposed only in the named trustee. *Fowler* v. *Hancock,* 89 N. H., 301, 302, 303.   The grant of the power

included, in analysis, a direction to convert the real estate, so far as it remained in the trust at the son's decease, into money, and a limitation of the direction to the named trustee is not sensible.

Since the will validly vested in the trustee the power to sell, no occasion for obtaining license from the Probate Court exists. The duty to sell as a prerequisite to distribution being established, it would be an extraordinary anomaly to be under the further duty to obtain permission to perform it, with a resulting confusion if the license were not granted. In *Harris* v. *Ingalls*, 74 N. H. 339, the seeming advisability of procuring such a license was declared, in view of the statute (P. S., *c.* 194, *s.* 15; P. L., *c.* 305, *s.* 17; R. L., *c.* 358, *s.* 17) authorizing the Probate Court to license an executor to sell real estate when the will shows the testator's intention that the executor should sell. Without now considering the need of an executor to obtain license to sell real estate which the will directs or authorizes him to sell, the statute is deemed inapplicable to trustees. Their need of license is provided for by another statute (R. L., *c.* 363, *s.* 13), and a trustee's discretionary power or directed command to sell by the will is not thought to require license for its exercise or performance.

The statute law is not designed to bar a testator's right to provide measures for the guidance and authority of his trustee. Clearly his right to make a will includes the right to give the trustee certain privileges and exemptions as a waiver or release of statutory duties of administration otherwise imposed. The testator, having his right of choice of a trustee with limited exceptions, may provide for the details of his control and management of the trust, if consistent with statutory or other policy of the law. Provisions by will for a trustee to decide division between principal and income, to invest the trust property in real estate or as his discretion may determine, not to be liable except for conduct of bad faith, to take compensation for services as the will may fix, and to engage investment counsel, may be cited among other matters which are generally understood to meet the requirement of his bond that he will "faithfully execute the trust according to the true intent of the devisor" (R. L., *c.* 363, *s.* 1, IV). The testator's right to place burdens on a trustee not imposed by statute and to relieve him from burdens not required to maintain judicial authority over the trust is only an incident of his right to dispose of his property by will in such manner as he sees fit and not by law forbidden. While judicial authority for supervision of the trust may not

be abridged, the authority is to be exerted in compliance with the terms of the will regulating management in respect to matters for which the statutes provide if the terms omit to do so. The principle that the terms of a will govern in the absence of a conflicting policy of the law as ordained by legislation or as declared by the courts is an elementary one. A testator's right to choose and name a trustee not reasonably fit to hold the office implies the additional right to free him from the reins of procedure otherwise directed.

II. The share of Martha who predeceased the testator and left no issue lapsed. The phraseology of the will giving her and three others "equal portions" of the final residue indicates no purpose to vest a joint ownership in them, and in application the extrinsic facts tending to show such a purpose are insufficient to overcome the face meaning of the phraseology. Unlike the facts in *Fowler* v. *Whelan*, 83 N. H. 453, in which the decision was of a divided court, the four named persons constituted no family group or any unit shown to be associated by the testator in some common and mutual connection. The suggestion that the testator learned of Martha's death without changing his will, if the fact may be competent evidence bearing on the meaning of the will (see *Emery* v. *Haven*, 67 N. H. 503), is met by the fact that he died within two years after her death with no knowledge on his part shown of her death. She lived in a distant place and her name had become changed by remarriage. And if track of her was not more or less lost, it is equally assumable that the testator either did not make up his mind before he died how to dispose of her share or took it for granted that he had made a joint disposal of the four shares. Moreover, if Martha had left issue, it cannot be said that the testator did not intend that the statute (R. L., *c.* 350, *s.* 12) should operate and give them her share. Conceding that he did not intend to die partially intestate and that the will gave his son all of his estate which he intended his son to have, his expression of intent rather than his actual state of mind tests his action. What he meant by what he said rather than by what he thought is of course determinative.

In effect, his will said that his son should have no more of his property than it expressly gave him, but failure to provide for disposal of his remaining property or some part of it could not defeat the statute of inheritance. He failed to think of, or at least to provide for, possibilities which might intervene to create lapses. He made no provision for the possibility of outliving his son or of his son outliving all of the four remaindermen, and in either event

the argument for treating the four shares as a class would have but little to support it. To hold them as a class under one contingency and as having separate interests under another would hardly express the testator's intention.

The conclusion is that the four shares were given in common and not jointly, that the failure to provide for a share that might lapse was due to oversight or misunderstanding, and that Martha's share therefore lapsed with the effect of its intestacy and with the result that it descended to the testator's son as his sole heir-at-law and is now a part of his estate.

The share of William belongs to the defendant White. William surviving the testator, the share became vested in him so as to be transferable by him while he outlived the testator and transmissible as belonging to his estate. The share was dependent on the failure of certain contingencies, but as an executory devise it became defeasibly vested in ownership. *Burleigh* v. *Clough*, 52 N. H. 267, 273; *Kennard* v. *Kennard*, 63 N. H. 303; *Vandewalker* v. *Rollins*, 63 N. H. 460; *Cole* v. *Society*, 64 N. H. 445, 447; *Parker* v. *Ross*, 69 N. H. 213; *Dana* v. *Sanborn*, 70 N. H. 152; *Kennard* v. *Kennard*, 81 N. H. 509, 511. The vested character of an interest subject to defeat upon the event of a subsequent occurrence equally inheres in an interest dependent upon the failure of a precedent condition. Between holding that one may have vested ownership subject to a contingency which will terminate it and holding that one may have such ownership subject to its loss if conditions upon which it is dependent are fulfilled, no logical difference appears. In the latter situation "the present right of future enjoyment whenever the possession becomes vacant" (*Kennard* v. *Kennard*, 63 N. H. 303, 310) exists as much as in the former. The testator's son never married, but even if he had and issue had been born of the marriage, the remainders over would have been vested subject to their defeat if either a widow or issue survived him. *Parker* v. *Ross, supra.*

It was formerly held that an executory devise was not alienable (*Burleigh* v. *Clough, supra*, 273), but in the reasonable development of the law and in consistency the vested character of the devise imports the usual attributes of title. In *Kennard* v. *Kennard*, 81 N. H. 509, the interest of a remainderman subject to defeat if the life beneficiary survived him was held validly assignable.

While William's interest at his decease became a part of his estate, his will gave all of his estate to his widow, and the facts indicate her acquisition of the interest freed from all claims of others against the estate. Her deed of the interest effected its full and complete

transfer. It is immaterial that the trust property, then consisting of real property, is to be converted by the trustee into money before distribution is made. The deed, although describing the real estate, transferred only a beneficial and equitable interest in it, whatever the form of the interest as real or personal estate might eventually be. The deed was as much a bill of sale of personal property as a conveyance of real estate.

George M. Tallant died during the continuance of the trust, intestate and leaving a widow and child. His interest upon his death became a part of his estate, as in the case of William. And as in the case of William, the interest was a share in the fund to be paid upon the death of the testator's son. The conclusion reached that the real estate in the trust should be sold and converted into money by the trustee as a preliminary of distribution results in giving the interest a character of personal estate at all times. The share was not of equitable ownership in each and every item going to make up the trust estate, but was a right to participate in a cash fund when the time came for its distribution. The testator devised no real estate to the sharers.

This share is payable to the administrator of this remainderman's estate in Minnesota where he was domiciled at his death. If one has not been appointed, those interested in his estate should obtain the appointment of one, and the trustee should await the appointment if there is no one now holding the office.

The share as personalty will become upon its payment a Minnesota asset, as it is already such an asset in its nature as a claim. So far as not required in the administration of this remainderman's estate, it will be distributed as the laws of Minnesota provide. No occasion for the appointment of an ancillary administrator here appears. Comity permits the domiciliary administrator to claim the share directly when local interests are not prejudiced and no statutory demands are disregarded. *Ghilain* v. *Couture*, 84 N. H. 48, 50–53.

In condensed statement, the trustee is to proceed to sell the real estate, and thereafter, upon the settlement of his account in the Probate Court, is to distribute the balance charged against him in equal shares among the administrator of the testator's son's estate, the defendant White, the administrator of George M. Tallant's estate, and Frank E. Tallant.

*Case discharged.*

All concurred.