Hillsborough,
June 5, 1945. } No. 3535.

MERCHANTS NATIONAL BANK OF MANCHESTER, *Trustee*

*v.*

HENRY F. BERRY & *a.*

390

*Wyman, Starr, Booth, Wadleigh & Langdell* for the trustee.

*Herbert W. Rainie* (by brief and orally), for N. H. Ass'n for the Blind.

*Albert H. White* for Albert Mathews.

*Thorp & Branch* (*Mr. Branch* orally), for Laura Offutt, Katherine O. Allen, Edward P. Offutt, Harriet Denham and Jean O. Davis.

*Warren, Wilson & Wiggin* (*Mr. Wiggin* orally), for Richard F. Berry and George Berry Hamilton.

*McLane, Davis & Carleton* and *Robert P. Bingham* (*Mr. Bingham* orally), for Visiting Nurse Ass'n of Manchester, N. H.

*Sulloway, Piper, Jones, Hollis & Godfrey* and *Louis Lawrence Green* of Massachusetts (*Mr. Piper* orally), for George R. Berry individually and as Adm'r of Mabel R. Berry.

*Joseph J. Betley, pro se,* as guardian *ad litem.*

JOHNSTON, J. Only the rights of parties as they are presently entitled to have them enforced against the trustee will be considered. *Gafney* v. *Kenison*, 64 N. H. 354, 357; *Gale* v. *Gale*, 85 N. H. 358, 361. There are two principal questions: to what is Richard F. Berry entitled, and what belongs to Trust Fund No. 4 because of the death of Mabel R. Berry without heirs in the descending line prior to that of the testator?

"In the absence of any clear evidence tending to show a purpose of intestacy the presumption is that she intended that all of her estate should pass by her will." *Clyde* v. *Lake*, 78 N. H. 322, 323, 324; *West* v. *Chase*, 92 N. H. 104. In the present will there is no clear intent to benefit all the heirs-at-law. Moreover there is evidence that the testator did not wish his heirs-at-law to take except as provided in his will. The fact that there was a detailed residual clause in the elaborate will supports the position that the testator did not intend to die intestate as to part of his estate. Of the six heirs he made substantial provision for four. Apparently he did not wish his heirs-at-law to take in fee except to a small extent because he arranged for life estates for these four. Here there is no failure of an expressed condition of testacy as in *White* v. *Weed*, 87 N. H. 153. It is true that, technically speaking, we are now deciding only the two questions above stated.

According to the ordinary meaning of the language of the will, the testator divided the rest, residue and remainder of his estate into six equal parts or shares. As shown in section (a) of paragraph XIII of the will the words "part" and "share" were used interchangeably. So far as the beneficiaries of Trust Fund No. 3 are concerned, these parts are entirely separate. There is no taking by classes except in so far as heirs in the descending line take per stirpes. In said paragraph XIII it was provided that Trust Fund No. 3 "be divided into six equal parts." After one-sixth of said fund was disposed of, the testator went on: "(b) Each of the remaining five parts of said William G. Berry Trust Fund No. 3, I hereby give and bequeath as follows: . . ." The disposition of each of the six parts apparently was complete. There was no intestacy with respect to any of each of said parts, if the views previously stated apply.

No question arises with regard to section (a). If we consider Trust Fund No. 3 and Trust Fund No. 4 together, there are three classes of beneficiaries that were provided for during the continuation of the former trust. The five named beneficiaries were first in mind. Then in the event of the decease of any one of the first class, his or

her heirs in the descending line took. Finally, if there were no such representative beneficiaries, the part or share went to charity—Trust Fund No. 4.

Richard F. Berry takes under the following clause: "if any of said persons die leaving heirs in the descending line, then said heirs in the descending line shall take what each of the above would have received if living at my decease." Arthur D. Berry, a named beneficiary, predeceased the testator, leaving as his sole heir in the descending line his son, Richard F. Berry. If living at the testator's decease, the father would have received the sum of ten thousand dollars and an equal share in the net income of the remainder of Trust Fund No. 3, after certain deductions, during his life. It is not disputed that the son is entitled to the sum of ten thousand dollars. A reasonable construction requires that he be given also a part of the income of five-sixths of the residue of the estate after the sum of $50,000 has been paid and any disbursement made to Trust Fund No. 4 both in accordance with the will, equally with the living named beneficiaries. This should be given during his life provided Trust Fund No. 3 does not terminate sooner. No opinion is expressed concerning any interest of Richard F. Berry in the principal of Trust Fund No. 3 or the termination of said trust. The present right of this individual is not limited to the lump sum stated without right to income. If that had been the intention, appropriate language would have been used to signify that that definite sum alone was meant rather than the words, "what each of the above would have received if living at my decease." Further it is to .be noted that the language is not "what each of the above would have received at my decease." The idea conveyed is that the heirs in the descending line take whatever the named beneficiary would have taken at any time, provided he or she outlived the testator. In order that the idea may be rational, the substitute beneficiary of course takes for his life rather than for the life of the one named. Again if this share of interest does not go to the son Richard, either of two things occurs: it becomes intestate property contrary to the views expressed above, or those entitled to the income take as a class contrary to the idea stated concerning the distinct separation of the six equal parts of the residue.

Mabel R. Berry died before the testator and left no heirs in the descending line. The clause of section (b) of paragraph XIII that is applicable is as follows: "If any of the above-named leave no heirs in the descending line, then I give and bequeath his or her share to

the Merchants National Bank (Trust Department), in trust, however, to be known as the William G. Berry Trust Fund No. 4. . . ." It is not disputed that at least the sum of $10,000 should be paid into Trust Fund No. 4, which is the sum that Mabel R. Berry would have received at the decease of the testator, if living. It would be unreasonable to hold that the testator intended any income for any length of time from Trust Fund No. 3 to be paid into Trust Fund No. 4, because this would mean that the beneficiaries of the latter trust would receive only income from income so far as this particular portion of the residue is concerned and there is no life to measure by. The benefit would be unduly small and the accumulation of the income from Trust Fund No. 3 might be unduly great. The result is extraordinary and not a natural meaning of the language of the will.

By "her share" the testator meant one-sixth of the residue of the estate. The word "her" is used as descriptive of the part or share of the residue and not for the purpose of limiting the size. The size of the share, which word we have seen is interchangeable with the word "part," is determined by the phrase in paragraph XIII, "said trust fund to be divided into six equal parts," and the words, "(b) Each of the remaining five parts. . . ." It is probable that the testator meant more than the sum of $10,000 by the words "her share," when such sum could easily have been described in clear, unequivocal language. Also quantitatively $10,000 is not "her share," which would have been that sum plus income for her life, but is less than such share. Moreover, the aforesaid reasoning against intestacy and consideration of the probable requirements of the four endowment funds of Trust Fund No. 4 favor the conclusion that one-sixth part was meant. If the sum of $10,000 only was intended for Trust Fund No. 4 in the event that one of the named beneficiaries died without heirs in the descending line, then so far as could be foreseen at the time of the execution of the will, the charities might take nothing because all five might have survived the testator and each received the stated sum. More than this specific sum was intended to go to Trust Fund No. 4, which the testator thought so much of that he bestowed upon it his name of William G. Berry.

*Case discharged.*

MARBLE, C. J. and BRANCH, J., did not sit: the others concurred.