265 A.2d 724.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND AND NANCY STEERE, *Executors u/w of Ruth G. Steere vs.* GLOCESTER MANTON FREE PUBLIC LIBRARY OF GLOCESTER, RHODE ISLAND *et al.*

MAY 25, 1970.

PRESENT: Roberts, C. J., Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a civil action seeking the construction of and instructions pertaining to the will of Ruth G. Steere. A hearing was held in the Superior Court, and the case was then certified to us pursuant to the provisions of G. L. 1956 (1969 Reenactment) §9-24-28.

The testatrix died on December 9, 1964, leaving a last will and testament dated April 29, 1959. The will was admitted to probate by the Providence Probate Court on January 26, 1965, and letters testamentary were issued to plaintiffs.

The portion of the testatrix's will that is before us is the residuary clause wherein the estate is divided into 10 parts to be divided equally among the beneficiaries thereof as set forth in paragraphs numbered 1 through 10. Paragraph 6 of the residuary clause reads as follows:

"6. In equal shares to the following

"A. The Chepatchet Library[1] in
Glocester, R. I. to be known
as the Frank Steere Memorial.

"B. Scituate Sanatarium[2] in North
Scituate, R. I. to be known as
the Steere Memorial in memory
of Oliver W. Steere—Father and
His Sons Fred Steere, Frank
Steere Esq., Arthur Steere M. D."

This suit arises from the fact that there is and was no such entity as the "Scituate Sanatarium." There was evidence adduced in the Superior Court which shows that a Rhode Island business corporation called the Sarar Corporation (Sarar) operated a nursing home in the Town of Scituate. The home was known as the "Scituate Sanitarium." The corporation's endeavors fell upon bad times and on January 10, 1964, all its assets were sold at a foreclosure sale. At the time of the testatrix's death, the nursing home was inoperative. There are corporation taxes due the state, and no annual reports have been filed with the Secretary of State since 1959.

In the Superior Court, the Scituate Ambulance and Rescue Corps, a Rhode Island nonbusiness corporation, was allowed to intervene in these proceedings. As noted in its name, the corps operates an ambulance service for anyone who may become sick or injured in Scituate or its vicinity. Although certain members of the corps were active in the management of the nursing home, there is no doubt that the corps and the home were separate entities. A witness who was an officer in both corporations testified

---

[1]This reference is incorrect. The plaintiffs state that the true name of this beneficiary is the Glocester Manton Free Public Library of Glocester, Rhode Island.

[2]In Webster's Third New International Dictionary, the word is spelled either "sanitarium" or "sanatorium."

that the corps did not operate the nursing home. He also admitted that, as of the date of the testatrix's death, Sarar was a mere corporate shell having no function and no assets. Sarar has filed an amended answer in which it insists that the bequest should be paid to the corps.

The question posed by plaintiff executors is what shall be done with the legacy originally destined for the nursing home. The legacy consists of cash and securities, and at the time of oral argument, it was valued as being in the neighborhood of $30,000.

A multitude of arguments has been advanced on behalf of the various heirs, beneficiaries, or organizations who share, or hope to share, in the estate of Ruth G. Steere. In the light of the great diversity of arguments propounded in this case, we shall not refer specifically to every argument made, but we shall refer only to those arguments which we believe contribute to a fuller understanding of our construction of the will before us. As we have said so many times before, our primary obligation in construing a will is to ascertain, if possible, the testator's dispositive intent as expressed in his will and to give effect thereto unless it is contrary to some established principle of law. *Edwards* v. *DeSimone*, 105 R. I. 335, 252 A.2d 327; *MacDonald* v. *Manning*, 103 R. I. 538, 239 A.2d 640; *Smith* v. *Powers*, 83 R. I. 415, 117 A.2d 844.

A reading of the Steere will and the uncontradicted evidence presented before the Superior Court make it quite clear that the intended recipient of the legacy due under paragraph 6 of the residuary clause was the nursing home operated by Sarar and known in the Scituate area as the "Scituate Sanitarium." Accordingly, the testatrix's failure to properly describe the corporate entity in her will would not, in and of itself, bar Sarar from receiving the gift because the description in the will, aided by extrinsic evidence, clearly identifies Sarar as the intended legatee.

See *Industrial National Bank* v. *Alexander von Humboldt Stiftung,* 105 R. I. 370, 252 A.2d 335; *First Baptist Church* v. *Soban,* 77 R. I. 115, 73 A.2d 772; *Warwick Central Baptist Soc'y* v. *Hohler,* 72 R. I. 445, 53 A.2d 494.

Although the testatrix intended to make a bequest for the general uses and purposes of the nursing home, it is obvious that at the time of her death this intent could not be effectuated since the object of the testatrix's bounty had ceased to function in the early part of 1963—almost 22 months prior to her death. The record shows that Sarar was incapable of taking the bequest intended for the nursing home. We believe that Sarar's insistence that the legacy be given to the corps is ample evidence of that fact.

Any assertion that the ambulance corps was the intended legatee finds no support in the record. The corps, a nonbusiness corporation, was an entity separate and distinct from the nursing home, which was a corporation designed to make a profit. Furthermore, it is conceded by the corps that it never operated the nursing home or any other convalescent facility.

Since the intended beneficiary of paragraph 6 was defunct at the time of the testatrix's death, the gift to the nursing home has lapsed.[3]

Having found that the gift has lapsed, we have examined the testator's will to determine whether consideration should be given to the application of the gift *cy pres*. *Cy pres* is invoked if it appears that the donor intended that his gift be applied to a charitable purpose the general na-

---

[3]In *Winsor* v. *Brown,* 48 R. I. 200, 136 A. 434, this court said that, while in its technical sense a "lapsed legacy" refers to a gift by will which becomes inoperative because the beneficiary died between the time of the will's execution and the testator's death, it would construe the word "lapse" to mean "fail." In the case at bar, we are using the term "lapsed legacy" to describe a gift which has failed to vest because of the incapacity of the beneficiary to take the gift. See *Booth* v. *Baptist Church,* 126 N. Y. 215, 28 N. E. 238.

ture of which is so described that it can be inferred that the donor had a general charitable intent. If, on the other hand, the donor had a specific intent to aid one particular object, then the *cy pres* doctrine is inapplicable. This case falls within the rule of *Gladding* v. *St. Matthew's Church*, 25 R. I. 628, 57 A. 860.

Applying these principles of law to the instant will, we do not find that the will demonstrates a general charitable intent. The testimony discloses that the testatrix was well acquainted with the works of the nursing home. Her father had been a patient there. The bequest was given in memory of her father and brothers. There is nothing in the record that warrants any finding that the legacy allocated to the nursing home was motivated by the testatrix's desire that the needs of the ill and the elderly be served. Rather the gift appears to be a token of her appreciation for the care given her father. Since the requisite general charitable intent is lacking, the use of the *cy pres* doctrine is inappropriate.

The library argues that, because it and the nursing home share equally the so-called sixth portion of the estate, the share destined for the home should be distributed to it. Since the two institutions were mentioned together in paragraph 6, the library claims ownership of the sixth share of the residuary estate. This contention merits serious consideration if the bequest constitutes a class gift. If a donor makes a gift to a class and one of the class goes out of existence before the death of the donor, the entire gift passes to the surviving member or members of the class who were in existence at the time the class was determined. *Hazard* v. *Stevens*, 36 R. I. 90, 88 A. 980. Usually a testamentary gift will be deemed to be a class gift when a bequest is given to a group of persons who at the time of the gift are uncertain as to number, but who are to be ascertained at some future time when all who constitute the

class will take an equal or other definite portion, the amount of each share being dependent upon the number that ultimately constitutes the class. *Industrial National Bank* v. *Dyer,* 96 R. I. 39, 188 A.2d 909.

In our opinion, the designation of the beneficiaries in the sixth part of the residuary clause, namely the "Scituate Sanatarium" and "The Chepatchet Library," does not constitute a gift to a class which would permit the library to take the entire sixth share. It is obvious that, at the time the testatrix drew her will, there were but two organizations that would share the sixth portion of her residuary estate. There was absolutely no uncertainty as to the number who would share this portion on April 29, 1959—the day the will was drawn.

We also point out that at the beginning of the bequest to the nursing home and the library are found the words "in equal shares to the following." This language is a significant indication that the gifts made to each beneficiary were in the nature of an estate in common. There is nothing in the record which shows that the testatrix ever intended that the nursing home and the library were to be given a joint interest in the sixth portion of the residuary. We think that the following portion of 4 Page, *Wills* §37.59, at 697-98 (1961 ed.), contains the rule of law controlling the library's claim of total ownership:

> "If testator's intention to create an interest not in its nature joint appeared on the will, the estate devised to two or more was held to be an estate in common. No technical words are necessary to show this intention. Any words which make such intention clear are sufficient. Words which frequently have this effect are those which indicate a separate division among the beneficiaries, such as a direction that the gift be divided among the beneficiaries equally, or in equal shares, or share and share alike."

Having concluded that the legacy bequeathed to the nursing home lapsed and that it cannot be paid to the am-

168

bulance corps or the Chepatchet library, we must now determine whether the one-twentieth share of the residue of the estate of Ruth G. Steere should be distributed to the remaining residuary legatees or to the testatrix's next of kin in accordance with the laws of intestacy.

It is elementary law that, in absence of a statute and where there is no express limitation or bequest over, a lapsed legacy falls into the residuary estate. *Rhode Island Hospital Trust Co.* v. *Votolato,* 102 R. I. 467, 231 A.2d 491; *Woodward* v. *Congdon,* 34 R. I. 316, 83 A. 433.

It was the rule at common law that a lapsed devise or bequest of a portion of the residuary estate did not pass into the remainder of the residue but, in absence of a specific provision by the testator to the contrary, it would pass as intestate property to the heirs at law. *Petition of Phillips,* 25 R. I. 254, 55 A. 696; *Re Will of Kimball,* 20 R. I. 619, 40 A. 847; *Church* v. *Church,* 15 R. I. 138, 23 A. 302. This common law rule was changed with the enactment of G. L. 1896, chap. 203, sec. 7, now known and cited as G. L. 1956, §33-6-20, which allows a lapsed residuary gift to pass to the other residuary beneficiaries. The pertinent part of the statute reads:

"Unless a contrary intention shall appear by the will * * * if a residuary devisee or legatee die before the testator without leaving issue living at the time of the testator's decease, and there be other residuary devisees or legatees named in such will in the same residuary clause, such other residuary devisees or legatees named in such clause, whether a class or not, shall take at the testator's decease the share of such residuary devisee or legatee so dying in like proportions as their shares bear one to another as expressed in said will under said residuary clause."

While the statute modifies the common law, it does not completely abrogate it because §33-6-20 speaks only of a residuary legatee who is a person. The legislation does not embrace a corporate legatee such as Sarar. We have

repeatedly said that a will should be construed so as to avoid any partial intestacy so long as such construction appears natural and reasonable. *Armington* v. *Meyer,* 103 R. I. 211, 236 A.2d 450; *Rhode Island Hospital Trust Co.* v. *Huntoon,* 94 R. I. 474, 181 A.2d 614; *Industrial Trust Co.* v. *Lathrop,* 72 R. I. 62, 47 A.2d 916. We have also remarked that the avoidance of intestacy is favored, especially when the partial intestacy relates to the residuary estate. This is so because it is assumed that, when a person makes a will, he intends to dispose of his entire estate. *Rhode Island Hospital Trust Co.* v. *Thomas,* 73 R. I. 277, 54 A.2d 432; *Edwards* v. *Martin,* 54 R. I. 64, 169 A. 751; *Pell* v. *Mercer,* 14 R. I. 412.

The common law rule that a lapsed residuary devise or bequest passes as if there had been intestacy has evoked considerable criticism. The judicial disfavor for a partial intestate distribution of a residuary estate is well expressed in the following excerpt from *Corbett* v. *Skaggs,* 111 Kan. 380, at 386, 207 P. 819, at 822:

> "We regard the rule that lapsed shares of deceased residuary legatees shall be treated as intestate property as in direct conflict with the one to which this court is definitely committed—that the actual purpose of the testator, so far as it can be ascertained, must be given effect. The presumption against intestacy of any part of the estate is a means of carrying out this policy which is disregarded by taking lapsed legacies out of the residue for the benefit of those who would inherit from the decedent in the absence of a will. The reasons for allowing lapsed specific legacies to fall into the residue apply with equal force in favor of allowing all the residue to go to the surviving residuary legatees in the case of the death of one of them, instead of turning over a part of it to persons for whom other provision had been made, or who had not been referred to in the will at all. The statement sometimes made in support of the latter practice— that the share of a deceased residuary legatee cannot

fall into the residue because it is itself a part of the residue — appears rather to play upon words than to point out any real difficulty."

In addition to *Corbett* v. *Skaggs, supra,* the rule has been rejected judicially in *In Re Slack Trust,* 126 Vt. 37, 220 A.2d 472; *Schroeder* v. *Benz,* 9 Ill. 2d 589, 138 N.E.2d 496; *Commerce National Bank* v. *Browning,* 158 Ohio St. 54, 107 N.E.2d 120. See also *In re Moloney,* 15 N. J. Super. 583, 83 A.2d 837. Many states have enacted legislation to counter the common law rule. See Purdon, *Pennsylvania Statutes Annotated* Title 20, §180.14(10)(1950); 2 Anderson, *Ohio Revised Code* Title 21, §2107.52 (1967); New Jersey Statutes Annotated §3A:3-14; Rhode Island §33-6-20. The intestate distribution of a lapsed residuary devise or legacy has come under critical fire in various treatises and law reviews. 6 Page, *Wills* §50.18, at 98-99 (1962 ed.); 10 N. Y. U. L. Q. Rev. 97; 36 Harv. L. Rev. 230; 55 Mich. L. Rev. 1202; 31 Yale L. J. 782.

The cases supporting and rejecting the common law rule may be found in annotations at 28 A.L.R. 1237; 139 A.L.R. 868 and 36 A.L.R.2d 1117.

Although a corporate legatee is not within the purview of §33-6-20, this statute reflects a public policy that cannot be ignored. While the rule enunciated in *Corbett* v. *Skaggs, supra,* may be classified as the minority rule, it represents in our opinion a progressive minority. It makes sense, and we adopt the *Corbett-Skaggs* rule as being applicable to any lapsed residuary devise or bequest which is not embraced within the terms of §33-6-20. As the court said in *In Re Slack Trust, supra,* the *Corbett-Skaggs* rule "* * * is a rule of construction only, adopted because it appears to comport most closely with the presumed intent of the testator in the usual case." It is at all times subject to the contrary expressions of intent in the instrument by the testator.

We can find nothing in the record before us which would warrant the conclusion that the "Scituate Sanatarium" legacy should pass out of the estate and be distributed to the heirs at law of the testatrix. Accordingly, this portion of the residuary estate should be distributed among the remaining residuary beneficiaries in proportion to their respective interest in the residue.

The parties shall submit for our approval a form of judgment in accordance with this opinion to be entered in the Superior Court.

PAOLINO, J., did not participate.

*Kingsley L. Bennett,* for plaintiffs.

Attorneys for defendants:

*Bradley L. Steere,* for Glocester Manton Free Public Library;

*Eugene A. Liberati, Theodore A. Miller,* for Sarar Corporation and/or Scituate Ambulance and Rescue Corps;

*Perry Shatkin,* Guardian of the person and Estate of John E. Steere;

*Edwards & Angell, Beverly Glenn Long, John H. Blish, Deming E. Sherman,* for Margaret P. Rose, Katheryn Ray and Central Baptist Church;

*Lewis A. Waterman,* for Bertha Edna Kimball Hadfield and Dorothy Kimball Dowe;

*Higgins, Cavanagh & Cooney, Albert D. Saunders, Jr.,* for Union Church of Chepachet;

*Herbert F. DeSimone,* Attorney General, *W. Slater Allen, Jr.,* Assistant Attorney General.