Rockingham County Probate Court, No. 6292.

*In re* GEORGE C. FROLICH ESTATE.

September 29, 1972.

*Perkins, Holland, Donovan & Beckett* (*Mr. John W. Perkins* orally) for the executrix.

*H. Alfred Casassa,* guardian ad litem, filed no brief.

KENISON, C.J. Certification of questions of law by the Probate Court of Rockingham County by *Treat,* J., pursuant to RSA 547:30 requesting instructions concerning the proper amounts and method of distribution under the trust estate of George C. Frolich. This is a proper method for obtaining instructions. *In re Peterson Estate,* 104 N.H. 508, 190 A.2d 418 (1963); *In re Harrington Estate,* 97 N.H. 184, 84 A.2d 173 (1951).

The reserved case indicates that the testator died November 20, 1969, leaving a will dated March 23, 1950. The entire estate was devised in trust to the testator's daughter, Georgia M. Kavanagh, as executrix and trustee, with directions to

support the testator's wife from the income and necessary principal of the estate for her life, if she survived the testator, with a gift over of the remainder to various legatees. After providing for cash bequests to certain of his grandchildren, the testator directed that his land and buildings at Stinson Lake, New Hampshire, be transferred by proper deed "free and discharged of all trusts" to Georgia M. Kavanagh. Testator then bequeathed the then remainder of the trust estate in the following shares, provided that the Stinson Lake property was a part of the trust estate which in fact was the case:

> To my daughter, Gladys Stormont of Derry, New Hampshire, six twenty-sevenths (6/27)

> To my granddaughter, Muriel Apper of Malden, Massachusetts, one twenty-seventh (1/27)

> To my daughter, Georgia M. Kavanagh of Needham, Massachusetts, eight twenty-sevenths (8/27)

> To my daughter, Marjorie I. Nagel of Malden, Massachusetts, twelve twenty-sevenths (12/27).

The testator was predeceased by his wife and by Gladys Stormont, who left lineal descendants, was survived by Muriel Apper (Chisolm) and Georgia M. Kavanagh, and was predeceased by Marjorie I. Nagel who left no lineal descendants.

The third paragraph of the will provided:

> I authorize my Executrix and Trustee, if in her opinion it becomes advisable or necessary to do so, to sell any real or personal property of my estate at public auction or private sale ... or otherwise dispose of the same without the consent of any court ...."

The court transferred without ruling the following questions for instructions:

> (a) As to the distribution of the aforesaid twelve twenty-sevenths (12/27) share of the said Marjorie I. Nagel, and

> (b) As to the procedure to be used in transferring the premises at Stinson Lake to herself.

Where one of several residuary legatees predeceases the testator, without lineal descendants (RSA 551:12), the orthodox common-law rule of construction in this and other jurisdictions has been that the lapsed residuary share passes by intestacy to the testator's heirs at law rather than being shared by the remaining residuary beneficiaries. *Upton* v. *White,* 92 N.H. 221, 29 A.2d 126 (1942); 6 Page, Wills *s.* 50.18 (Bowe-Parker rev. 1962); Atkinson, Law of Wills *s.* 140, at 784 (2d ed. 1953). *See generally* Annot., 36 A.L.R.2d 1117 (1954). The rule dates back at least to *Bagwell* v. *Dry,* 1 P. Wms. 700, 24 Eng. Rep. 577 (Ch. 1721), beginning as a rule of law applicable regardless of the testator's intent (*Humble* v. *Shore,* 7 Hare 247, 68 Eng. Rep. 101 (Ch. 1847); *see* 2 Jarman, Wills 1016-20 (7th ed. 1930)), and finally evolving into a rule of construction to be utilized in the absence of some expression of intent in the will. Note, 36 Harv. L. Rev. 230 (1922).

The reasons underlying the rule are said to be that there can be no "residue of a residue" since the residuary clause cannot "catch" property itself a part of the residue (Atkinson, Law of Wills *s.* 140, at 784 (2d ed. 1953)), and that to augment the shares of the remaining residuary legatees would be to frustrate the intent of most testators who intend that the residual beneficiaries shall receive only the specific portions bequeathed to them and no more. *E.g., Gray's Estate,* 147 Pa. 67, 23 A. 205 (1892); Note, 55 Mich. L. Rev. 1202 (1957). The "residue of a residue" reason has been attacked as merely a "play upon words" lacking any substantive value (*Corbett* v. *Skaggs,* 111 Kan. 380, 207 P. 819 (1922)) as has the theory of the testator's "intent" since at the time of the will's execution the residue is of an unascertainable amount. *Wright* v. *Wright,* 225 N.Y. 329, 340-41, 122 N.E. 213, 217 (1919); Legislation, 26 Ford. L. Rev. 372 (1957). The original true reason behind the rule has been said to rest upon an attempt by the tradition-oriented English courts to keep the devolution of property in the "regular" channels; that is, to facilitate its passing to the heirs and next of kin. Note, 9 N.Y.U. Intra. L. Rev. 262 (1954).

The traditional rule passing a lapsed residual share by intestacy has been strongly criticized for many years by courts

and commentators alike. 5 Am. Law of Real Prop. *s.* 22.6, at 258 (A.J. Casner ed. 1952); Legislation, 26 Ford. L. Rev. 372, 377-80 (1957); Note, 10 N.Y.U.L.Q. Rev. 97 (1932); Note, 36 Harv. L. Rev. 230 (1922); Note, 31 Yale L.J. 782 (1922); *Gray's Estate supra; Corbett* v. *Skaggs supra; Commerce Nat'l Bank* v. *Browning,* 158 Ohio St. 54, 107 N.E.2d 120 (1952). This technical rule has evoked considerable dissatisfaction and has been reluctantly enforced by the courts generating a confusing and contradictory body of cases. *Industrial Nat'l Bank* v. *Glocester Manton Free Pub. Library,* 107 R.I. 161, 265 A.2d 724 (1970); Legislation, 26 Ford. L. Rev. 372, 377-79 (1957). *See generally* Annot., 36 A.L.R.2d 1117 (1954). The most cogent criticism of the rule is that it very probably defeats the testator's general testamentary intent in most cases. *In re Dunster,* [1909] 1 Ch. 103; Halbach, Stare Decisis and Rules of Construction in Wills and Trusts, 52 Calif. L. Rev. 921, 940 (1964); Atkinson, Law of Wills *s.* 140, at 185 (2d ed. 1953); 4 Page, Wills *s.* 33.56, at 390-91 (Bowe-Parker rev. 1961); Note, 34 Va. L. Rev. 722 (1948).

Even those courts which have retained the old rule on grounds of stare decisis have strained to the utmost to find the slightest evidence of a contrary intent in order to avoid the rule. 6 Page, Wills *s.* 50.18, at 99 (Bowe-Parker rev. 1962); 2 Jarman, Wills 1016-20 (7th ed. 1930); 9 N.Y.U. Intra. L. Rev. 262, 267 (1954). *See also Roberts* v. *Tamworth,* 96 N.H. 223, 73 A.2d 119 (1950); *Fowler* v. *Whelan,* 83 N.H. 453, 144 A. 63 (1928). Where a resort to constructional fiction is frequent because a rule is unsound, as is the case with the traditional rule here involved, a change in the rule is clearly indicated. Halbach *supra.* And in such a case the objectives of stare decisis are actually promoted rather than undermined by a change in the rule. *Id.* The recent judicial trend has been to discard the traditional rule and allow the surviving residual legatees to share the lapsed portion of the residue. *E.g., In re Estate of Jackson,* 106 Ariz. 82, 471 P.2d 278 (1970); *In re Slack Trust,* 126 Vt. 37, 220 A.2d 472 (1966); *see* Note, 55 Mich. L. Rev. 1202 (1957). The old rule has been abrogated by statute in at least six states. *Industrial Bank* v. *Glocester Manton Free Pub. Library,* 107 R.I. 161, 170, 265 A.2d 724, 729 (1970). The Uniform Probate Code *s.* 2-606(b) rejected

the traditional rule in favor of passage of lapsed residuary legacies to the other residuary legatees. O'Connell and Effland, Interstate Succession and Wills: A Comparative Analysis of the Law of Arizona and the Uniform Probate Code, 14 Ariz. L. Rev. 205, 251 (1972).

The cardinal rule of will construction in this jurisdiction has always been to effectuate the testator's intent if at all possible. *See In re Estate of Griffin,* 110 N.H. 400, 269 A.2d 126 (1970); *Fogg* v. *Clark,* 1 N.H. 163 (1818). We have held a will may indicate as a whole the testator's intent to treat a group of named residuary legatees as members of a class so as to allow a lapsed portion to remain in the residue to be divided by the survivors. *Roberts* v. *Tamworth supra;* Hoyt, Probate Practise 80 (1901); 3 Treat, Probate Law *s.* 1088 (1968). However, where there has been no discernible evidence of some expresssion of "group-mindedness" by the testator, we have in the past followed the traditional rule passing lapsed portions of the residue to the heirs. *Upton* v. *White supra.* Precedents, however, should not ordinarily hinder the abolition of unsound rules of construction. Halbach *supra.*

The mere execution of a will indicates that the testator intended to die testate and, in the absence of "evidence of a purpose of intestacy", there is a presumption that a testator intended his entire estate to pass under his will. *E.g., Kemp* v. *Dowling,* 94 N.H. 198, 200, 49 A.2d 924, 925 (1946). Further, a residuary clause by its very nature disposes of all of the estate not otherwise devolved and strengthens the presumption that the testator intended his entire estate to pass by his will. *Cotter* v. *Cotter,* 103 N.H. 551, 176 A.2d 316 (1961); *Merchants &c. Bank* v. *Berry,* 93 N.H. 388, 42 A.2d 693 (1945); *Fowler* v. *Whelan supra;* 4 Page, Wills *s.* 30.14 (Bowe-Parker rev. 1961). Ordinarily a testator will include his most favored legatees in the residual bequest intending that they shall take the bulk of his estate to the exclusion of any unnamed heirs. Thus, the traditional rule of construction, in passing lapsed portions of the residue as intestate property, vitiates the ordinary testator's intent, or what he probably would have intended had he thought about the problem.

Arbitrary canons of construction always give way in this jurisdiction to a single broad rule of construction favoring the "maximum validity of the testator's dispositive plan." *Opinion of the Justices*, 109 N.H. 335, 336, 251 A.2d 330 (1969); *In re Lathrop Estate*, 100 N.H. 393, 395, 128 A.2d 199, 201 (1956). The very purpose of constructional rules in the law of wills is to supply a probable "intent" where in fact the testator has failed to express one, similar to the function of statutes of descent and distribution. Halbach, *supra* at 932. Rules of construction which defeat more often than they implement a testator's intent can hardly be said to serve their office and consequently are not enforced in this State. *See Emery* v. *Haven*, 67 N.H. 503, 35 A. 940 (1893).

For these reasons, we now adopt the rule that the failure of a portion of the residue results in the division of such portion among the remaining residuary legatees in proportion to their relative shares of the residue. *See* Uniform Probate Code *s.* 2-606(b). We adopt this rule because it appears to comport most often with the presumed intent of the ordinary testator. As all rules of construction, however, the rule will operate only in the absence of a contrary expression of intent by the testator. This rule is also subject to the anti-lapse statute, RSA 551:12, such that lapsed residual shares will pass to the surviving residuary legatees only when the deceased legatees have left no lineal descendants. To the extent that it is inconsistent with this opinion, *Upton* v. *White, supra,* is overruled.

The executrix is instructed that the twelve twenty-sevenths share of the residue bequeathed to Marjorie I. Nagel should be divided among the remaining residuary legatees, or their representatives, in proportion to their relative share of the residue, to wit:

Gladys Stormont: six-fifteenths (6/15);

Muriel Apper (Chisolm): one-fifteenth (1/15); and

Georgia M. Kavanagh: eight-fifteenths (8/15).

The second question raised by the petition involves the proper procedure to be used by Georgia M. Kavanagh, named in the second paragraph of the will as executrix and trustee, in transferring the Stinson Lake property to herself as the sole legatee thereof. Paragraph Third D. 1 of the will directed

the trustee: "To transfer and deliver by proper deed of conveyance said land with the buildings thereon at Stinson Lake, New Hampshire, free and discharged of all trusts to my daughter . . . ." The real question here involved is whether an executor or trustee conveying property to himself pursuant to the terms of a will or trust instrument violates the traditional rule forbidding fiduciaries from selling trust or estate assets to themselves, a cornerstone of the fiduciary's duty of loyalty. Bogert, Trusts and Trustees *s.* 543(A) (2d ed. 1960); 2 Scott, Trusts *s.* 170.1 (3d ed. 1967); *Hoitt* v. *Webb,* 36 N.H. 158 (1858).

"In the absence of a contrary public policy or prohibitory legislation express or implied, it is the rule in this State that the expressed intention of the grantor will override, whenever possible, purely formalistic objections to real estate conveyancing based on shadowy, subtle and arbitrary distinctions and niceties of the feudal common law." *Therrien* v. *Therrien,* 94 N.H. 66, 46 A.2d 538 (1946). So, too, it is this State's rule that a person's right to dispose of property by will or trust in such manner and by such means as he sees fit includes the right to increase or decrease those burdens which are ordinarily imposed upon fiduciaries by statute and which are not required to maintain judicial authority over the trust or estate. *Upton* v. *White supra.* It is equally true that a testator may relieve a trustee or executor of most common-law burdens, including the duty of loyalty, and direct or authorize the fiduciary to sell to himself. Bogert, *supra ss.* 543 (A) (Supp. 1972, at 115) and (U); 2 Scott, *supra ss.* 164, and 170.9, at 1321. The broad rule in this State, then, is that in every transfer of property, whether by deed, by will or by trust, the method as well as the object of disposition intended by the transferor will be given effect if not contrary to statute or public policy. *Jacobs* v. *Bean,* 99 N.H. 239, 240, 108 A.2d 559, 560 (1954).

The petitioner in this case was directed in effect to deed the Stinson Lake property from herself as executrix and trustee to herself as the legatee. She was also authorized by the third paragraph of the will to dispose of any property without court consent. The testator thus clearly expressed the manner in which he intended the property to be transfer-

red. Since there is no statute or public policy militating against implementation of the method of transfer selected by the testator in this case, the terms of the will supersede the common-law rule against fiduciaries selling to themselves. The method of transfer directed by the testator will thus be given effect.

We are not unmindful that title to the Stinson Lake property passed to the petitioner by operation of law upon the death of the testator (*Wentworth* v. *Wentworth,* 75 N.H. 547, 78 A. 646 (1910)), or that petitioner has already obtained full title thereto by merger of the legal and beneficial interests. Restatement (Second) of Trusts *s.* 99(5) and Comment *e,* and *s.* 341 (1959). However, both of these doctrines are secondary to this State's fundamental tenet of law discussed above which implements whenever possible the intent of transferors of property by will or otherwise.

The petitioner is advised with respect to the second question that, upon the payment of all debts of the estate, and in accordance with the terms of the will, the executrix and trustee is to deed to herself individually the property at Stinson Lake.

*Remanded.*

All concurred.